FILED
98 AUG -5 PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC., | }<br>} |
| Plaintiff | }<br>} |
| vs. | } CIVIL ACTION NO.<br>}<br>} 97-AR-1495-S |
| ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY, | }<br>}<br>} |
| Defendant | |

CKO

ENTERED
AUG 5 1998

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, St. Paul Fire and Marine Insurance Company ("St. Paul"), which opposes plaintiff's request for a declaratory judgment that it has a duty to cover losses sustained by plaintiff, Haman, Inc. ("Haman") as a result of methyl parathion contamination of the Village Lodge Hotel ("Village Lodge" or "hotel"), in Pascagoula, Mississippi. The legal effect of granting St. Paul's motion will be to declare that it has no such duty. Haman owns and operates the affected hotel. For the reasons stated below, St. Paul's motion will be granted.

### I. FACTS

The dispute centers around losses Haman sustained as a result of improper extermination services performed at the Village Lodge. In 1996, Haman contracted with Paul F. Walls, Sr. ("Walls"), to perform extermination services at the hotel. Walls

46

had performed such services at various personal residences in the Pascagoula area. When several of his residential customers became ill, the Environmental Protection Agency ("EPA") performed tests which indicated that Walls had used methyl parathion, a highly toxic pesticide, to accomplish the exterminations. Because exposure to methyl parathion is potentially lethal, 12 No. 7 NAAG Nat'l. Envtl. Enforcement J. 25 (hereinafter NAAG), the EPA forced Haman to close the hotel and to decontaminate it before reopening to the public. As a result of the closing and cleaning efforts, Haman incurred financial losses, for which it unsuccessfully demanded reimbursement from St. Paul under a St. Paul insurance policy covering the hotel.

After reviewing its policy, inspecting the hotel, reviewing EPA documents and reading newspaper articles concerning the contamination, a St. Paul insurance adjuster denied Haman's claim. (Williams Aff., Def.'s Ex. C (Doc. 17).) Haman then sued St. Paul, in the Circuit Court of Jefferson County, Alabama, for breach of contract and bad faith refusal to pay. Haman timely removed the case to this court based upon diversity of citizenship jurisdiction. 28 U.S.C. §§ 1441, 1332.

## II. INTERPRETATION OF INSURANCE CONTRACTS UNDER ALABAMA LAW [1]

> Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the insurance policy, while the insurer bears the burden of proving the applicability of any policy exclusions.
>
> According to the Alabama Supreme Court, "insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, <u>provided that those exclusions do not violate a statute or public policy</u>." An insurance contract, like other contracts, is "construed to give effect to the intention of the parties thereto, and when the intention is clear and unambiguous, the policy must be enforced as written ...."
>
> The question of "whether a provision of an insurance policy is ambiguous is a question of law for the court." Where the parties disagree on whether the language in an insurance contract is ambiguous, <u>the court should construe the language according to "the meaning that a person of ordinary intelligence would reasonably think the language had</u>."

*Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F. Supp. 1450, 1453 - 54 (M.D. Ala. 1997) (citations omitted and emphasis supplied).

## III. POLLUTION EXCLUSION CLAUSE

St. Paul first argues that Haman's losses are excluded under the insurance policy's "pollution exclusion" clause and related

---

[1] The parties do not dispute that Alabama substantive law applies in the present case.

provisions.[2] The pollution provision generally excludes coverage for "[p]ollution caused directly or indirectly by the release, discharge, [or] dispersal ... of pollutants or contaminants ...." (Def.'s Ex. A, Policy Section V(O) at pg. 2.) However, coverage is provided when the pollution is caused by one of many enumerated conditions, such as lightening, riot or falling objects. (Def.'s Ex. A, Policy Section V(O) at pg. 2.)

---

[2] The pertinent policy provisions provide:

This Policy does not insure against loss or damage caused by or resulting from: ...

Pollution caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or containments unless the release, discharge, dispersal, seepage, migration, or escape is caused by fire, lightning, explosion, windstorm, hail, leakage from fire protection equipment, smoke, vehicles and aircraft, riot, civil commotion, vandalism, sinkhole collapse, volcanic action, falling objects, weight of snow, ice or sleet, or water damage. However, this policy does not cover the costs arising out of the enforcement of any law, ordinance, regulation or order by civil or judicial authority requiring the removal, disposal, replacement, cleanup, restoration or containment of insured property or for costs to monitor or test for the existence or effects of pollutants.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence of the loss.

(Def.'s Ex. A, National Accounts Property Broad From Protection, Section V(O) at pg. 2 (hereinafter, "Policy"))

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste pollutants" means those pollutants which are at any time transported, handled, stored, treated, disposed of or processed as wasted by or for the Insured, or for whom the Insured is legally liable.

(Def.'s Ex. A, Policy Section VI(G), at pg. 4)

Because none of the enumerated conditions applies in the present case, Haman can only recover if it establishes that its damages were not caused by the discharge of "contaminants" or "pollutants," which the policy defines as "irritants" or "contaminants." (See Def.'s Ex. A, Policy Section VI(G) at pg. 4.) Such a showing is impossible under the present circumstances.

Haman seeks to recover for losses incurred as a result of damage caused by methyl parathion, which is, without legitimate dispute, a "pollutant or contaminant." "Methyl parathion is so toxic that it is restricted under federal law for use only as an agricultural pesticide in uninhabited open fields." 4 No. 11 Bus. Crimes Bull.: Compliance & Litig. 9. "When used indoors, the pesticide can cause nausea, vomiting, headaches and diarrhea, and high exposures can lead to convulsions, cardiac arrest and death." 5 No. 20 Mealey's Emerging Toxic Torts 33. Indeed, the exterminator responsible for the damage was sentenced to six years and six months in prison for illegally using the pesticide as a residential exterminant. NAAG., *supra*. Given these facts, there is no question that methyl parathion is a pollutant, irritant or contaminant, as defined in the insurance agreement, (See Def.'s Ex. A, Policy Section V(O) at pg. 2; Policy Section VI(G) at 4).

However, Haman counters by arguing that "a person of ordinary intelligence" would not reasonable interpret the pollution exclusion as the court does. Because methyl parathion has "legitimate uses," Haman contends that a reasonable person would not conclude that the chemical is a pollutant, as defined in the policy. Haman analogizes methyl parathion to other products with legitimate uses, such as ordinary household cleaners, disinfectants, and fertilizers, which homeowners and businesses use daily. Surely, a reasonable person would not consider such common place products, with "legitimate uses," pollutants, Haman contends. However, a finding that a legitimately useful product, such as methyl parathion, is a pollutant would effectively exclude from coverage any damage caused by the misapplication or use of ordinary household products, thereby frustrating the reasonable expectations of Alabama's insureds, Haman argues.

Under the present circumstances, Haman's argument is unpersuasive. Despite its legitimate uses, reasonable persons would agree that a highly regulated chemical, which can only be used in uninhabited open fields, is a pollutant, irritant or contaminant. *See Shalimar*, 975 F. Supp. 1450, 1457 (applying a pollution exclusion provision to lead which, this court notes, also has legitimate uses). Haman cannot seriously analogize a

6

substance which cannot be used in the presence of humans to ordinary household products, which reasonable persons might conclude are not pollutants. Therefore, without any evidence that the St. Paul pollution exclusion, as applied to the facts of this case, violates a statute or state public policy, *Shalimar*, 975 F. Supp. at 1453, the court holds that the policy excludes coverage for the methyl parathion damage to the Village Lodge. *See Shalimar*, 975 F. Supp. at 1457, n.4 (upholding application of a pollution exclusion under Alabama law and citing identical decisions in other jurisdictions); *Kruger Commodities, Inc. v. United States Fidelity And Guaranty*, 923 F. Supp. 1474, 1477 - 1480 (M.D. Ala. 1996) (upholding a pollution exclusion provision under Nebraska law, but noting that such a holding is also supported under Alabama law); *Reliance Ins. Co. v. Kent Corp. Inc.*, 896 F.2d 501 (11th Cir.), *vacated due to settlement of the parties prior to consideration of a petition for rehearing*, 909 F.2d 424 (1990).[3]

### IV. THE CONTAMINATION EXCLUSION PROVISION

Even if the pollution provision did not exclude coverage for

---

[3] Haman also argues that the pollution exclusion clause only applies to outdoor environmental pollution. However, Haman can cite to no insurance contract provision, nor to any Alabama statutory law or common law which would support such an argument. Without some indication that an Alabama court would utilize such a novel interpretation of the pollution exclusion involved herein, this court is unable to advance a change in Alabama law.

7

the extermination incident, Haman's damages are excluded under the contamination exclusion provision.[4] This provision explicitly excludes coverage for loss or damage "caused by or resulting from ... contamination ...." (Def.'s Ex. A, Policy Section V(A) at pg. 1.) "'Contamination' connotes a condition of impurity resulting from mixture or contact with a foreign substance." *American Casualty Co. of Reading, Pa. v. A. L. Myrick*, 304 F.2d 179, 183 (5th Cir. 1962).[5] Because the atmosphere in the Village Lodge was so "impure" that it became uninhabitable and this impurity resulted from contact with a "foreign substance," methyl parathion, the extermination incident caused contamination. Therefore, Haman cannot recover under the St. Paul policy which excludes "all losses occasioned by contamination without regard to the cause of the contamination." *Auten v. Employers Nat. Ins. Co.*, 722 S.W.2d 468, 470 (Tex. App. 1986) (holding that an insurance policy's contamination provision

---

[4] The contamination exclusion provides:

This Policy does no insure against loss or damage caused by or resulting from: ...

> dampness of atmosphere, dryness, changes of temperature, heating shrinkage, evaporation, loss of weight, leakage of contents, exposure to light, contamination, change in flavor or color or texture or finish ....

(Def.'s Ex. A, Policy Section V(A) at pg. 1).

[5] The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

8

misapplication of pesticides). *Accord McQuade v. Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67 (D. Mass. 1984).

## V. CONCLUSION

Haman may have needed and wanted coverage for this kind of loss, but it only got what its contract provided, and its contract did not provide the coverage it wants this court to provide. Because there was no breach of the contract of insurance, there could be no bad faith failure to pay. Accordingly, St. Paul's motion for summary judgment will be granted.

A separate and appropriate order will be issued.

DONE this 5th day of August, 1998.

                                                 *[signature]*
                                         WILLIAM M. ACKER, JR.
                                         UNITED STATES DISTRICT JUDGE